# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 2:03-CR-162** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **BERNARD ROTTSCHAEFER, M.D.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Bernard L. Rottschaefer ("Rottschaefer") petitions this court for a writ of error *coram nobis*. (Doc. 140). He asks that we overturn his convictions for unlawful distribution of controlled substances. We will deny Rottschaefer's petition.

## I.  Factual Background & Procedural History

In 2003, a grand jury returned an indictment charging Rottschaefer, a medical doctor, with 208 counts of unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). A petit jury found Rottschaefer guilty on 153 of the counts after a 7-day trial, and he was sentenced to 78 months' imprisonment. United States v. Rottschaefer, 178 F. App'x 145, 146, 151 (3d Cir. 2006) ("Rottschaefer I") (nonprecedential).

Rottschaefer timely filed a notice of appeal. While the appeal was pending, Rottschaefer moved for a new trial based on newly discovered evidence. See id. at 148. This evidence included over 500 pages of correspondence between Jennifer Riggle ("Riggle"), one of the government's trial witnesses, and her then-boyfriend. Id. At trial, Riggle had testified that she exchanged sexual favors with Rottschaefer for various controlled-substance prescriptions. Id. Riggle's correspondence with

her then-boyfriend indicated that she had fabricated this testimony to receive a mitigated sentence for drug charges pending against her. Id. The trial court denied Rottschaefer's motion for a new trial, finding that this additional evidence was merely cumulative and impeaching. Id. at 148-49. The Third Circuit upheld this ruling on appeal, albeit for different reasons. Id. at 149-51.

Rottschaefer's direct appeal also challenged the validity of his conviction on the basis of prosecutorial misconduct and ineffective assistance of counsel. Id. at 146-47. He argued that by convicting him of prescribing drugs for "no legitimate medical reason," the jury had wrongly applied a civil, rather than criminal, standard of liability. Id. The Third Circuit rejected this argument, finding that the trial court provided the proper standard to the jury and that defense counsel was not ineffective for failing to object to its use. Id. at 148. Nonetheless, the Third Circuit vacated Rottschaefer's sentence and remanded the case for resentencing in accordance with United States v. Booker, 543 U.S. 220 (2005). On remand, Rottschaefer was resentenced to 60 months' incarceration and three years of supervised release.

Meanwhile, the five patient-witnesses who testified against Rottschaefer at his criminal trial had filed civil malpractice claims against him. Rottschaefer used the information obtained during civil discovery to prepare a second motion for a new trial. Rottschaefer advanced two claims: (1) that the deposition testimony in four of the civil cases proved that the patients had lied at Rottschaefer's criminal trial, and (2) that the government knowingly allowed two patients to testify falsely that they had not been promised leniency in exchange for testimony. The district

court denied Rottschaefer's second motion. United States v. Rottschaefer, No. 3-CR-162, 2006 WL 3840997, at *1 (W.D. Pa. Dec. 29, 2006) ("Rottschaefer II"). On appeal, the Third Circuit affirmed. United States v. Rottschaefer, 264 F. App'x 234 (3d Cir. 2008) ("Rottschaefer III") (nonprecedential).

Undeterred, Rottschaefer filed a motion to vacate and set aside sentence pursuant to 28 U.S.C. § 2255. Rottschaefer claimed that his trial attorneys were ineffective because they "failed to: (1) obtain a medical expert to rebut the government's medical expert; (2) object to improper testimony; (3) obtain medical records; and (4) object to the jury instructions." United States v. Rottschaefer, No. 3-CR-162, 2009 WL 4114616, at *1 (W.D. Pa. Nov. 25, 2009) ("Rottschaefer IV"). The district court denied Rottschaefer's Section 2255 motion, and the Third Circuit denied his request for certificate of appealability on January 22, 2010. More than seven years later, Rottschaefer filed the instant *pro se* petition for a writ of error *coram nobis*.[1] The petition is fully briefed and ripe for disposition.

## II. Legal Standard

The writ of error *coram nobis* is an ancient and "extraordinary remedy." United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989). It is used to attack allegedly invalid federal convictions where the defendant suffers continuing consequences but is no longer in custody. See, e.g., United States v. Morgan, 346 U.S. 502, 512-13 (1954); Stoneman, 870 F.2d at 105-06. Errors that could be

---

[1] This matter was designated for service to the undersigned judicial officer shortly thereafter.

3

remedied by a new trial usually do not fall within the ambit of the writ. United States v. Rhines, 640 F.3d 69, 71 (3d Cir. 2011). Rather, the error must "be fundamental and go to the jurisdiction of the trial court, thus rendering the trial itself invalid." Id. (quoting Stoneman, 870 F.2d at 106). Earlier proceedings are presumed to be correct, and the petitioner bears the burden of demonstrating otherwise. United States v. Cariola, 323 F.2d 180, 184 (3d Cir. 1963).

The court's jurisdiction to grant *coram nobis* relief is extremely limited. Id. Indeed, the Supreme Court has remarked that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (alteration in original) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)). Due to the interest in finality of judgments, the standard for *coram nobis* relief is even stricter than the standard for habeas relief. Stoneman, 870 F.2d at 106 (citing United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988)). To obtain such a writ, the petitioner must demonstrate five elements: (1) he is no longer in custody; (2) his trial contained errors of fact "of the most fundamental kind"; (3) no remedy was available at the time of his trial; (4) he suffers continuing consequences of his criminal conviction; and (5) sound reasons exist for his failure to seek relief at an earlier time. Id. at 105-06 (quoting Cariola, 323 F.2d at 184).

### III. Discussion

The parties agree that Rottschaefer is no longer in custody. Thus, Rottschaefer's petition turns on four issues: whether his trial was fundamentally erroneous, whether there was a remedy available at trial, whether Rottschaefer

4

suffers continuing consequences from his conviction, and whether he has provided sound reasons for his failure to seek relief earlier. Assuming, without deciding, that Rottschaefer suffers continuing consequences, we conclude that he is unable to establish the remaining requirements for *coram nobis* relief.

A. **Rottschaefer's Trial and Available Remedies**

Rottschaefer makes two noteworthy claims regarding the validity of his trial: *first*, that the district court erroneously qualified Douglas Clough, M.D. ("Dr. Clough") as an expert witness, and *second*, that the government engaged in prosecutorial misconduct.[2] Neither argument warrants relief.

---

[2] Criminal defendants may not resort to a *coram nobis* petition simply because they cannot meet the standard necessary for a successful initial or successive motion under 28 U.S.C. § 2255. Rhines, 640 F.3d at 72. Moreover, petitions for *coram nobis* ordinarily may not be used to relitigate issues that were rejected on direct appeal or collateral review. See, e.g., United States v. Zuckerman, 367 F. App'x 291, 293-94 (3d Cir. 2009) (*per curiam*) (nonprecedential) (holding that *coram nobis* may not be used to relitigate previously rejected issues unless other post-conviction remedies are "inadequate and ineffective"); United States v. Harkonen, 705 F. App'x 606, 606-07 (9th Cir. 2017) (nonprecedential); United States v. Brown, 692 F. App'x 800, 800 (8th Cir. 2017) (*per curiam*) (nonprecedential); Calvert v. United States, 351 F. App'x 475, 476 (2d Cir. 2009) (nonprecedential); United States v. Schreier, No. 95-5076, 1996 WL 159945, at *2 (10th Cir. Apr. 5, 1996) (table). Rottschaefer's petition attempts to relitigate three claims that were previously asserted and rejected: (1) that Drug Enforcement Administration ("DEA") Agent Lewis Colosimo provided invalid expert testimony (rejected in Rottschaefer IV); (2) that the trial court wrongly applied a civil, rather than criminal, standard of liability (rejected in Rottschaefer I); and (3) that Judge Lancaster abused his discretion in denying Rottschaefer's second motion for a new trial (rejected in Rottschaefer III). Rottschaefer provides no new information or legal authority for these claims; he simply attempts to refute the reasoning of the district court and court of appeals. Consequently, we decline to entertain these recycled arguments.

5

### 1. *Dr. Clough's Testimony*

Rottschaefer claims that the district court and the Third Circuit inconsistently applied the law by failing to disqualify Dr. Clough as an expert witness. In support, Rottschaefer points to a letter issued by the DEA purporting to establish that Dr. Clough's own prescribing practices violate federal law. Rottschaefer also relies on Dr. Clough's testimony that he never studied or practiced pain management. Rottschaefer asserts that permitting Dr. Clough to testify as an expert constitutes fundamental error.

This argument is unavailing. *Coram nobis* relief is reserved only for "errors of *fact* of 'the most fundamental kind.'" Cariola, 323 F.2d at 184 (emphasis added) (quoting United States v. Mayer, 235 U.S. 55, 69 (1914)). Qualification of an expert witness, *per contra*, is a question of law. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-92 (1993); FED. R. EVID. 702. Even if Rottschaefer's claim fell within the rubric of factual error, it would still fail. Rottschaefer cannot demonstrate that he utilized all available trial remedies to rectify this alleged error. For example, Rottschaefer could have cross-examined Dr. Clough about his purportedly illegal prescribing practices, raised the expert-qualification issue on direct appeal, or collaterally attacked the decision to allow Dr. Clough to testify as an expert. Rottschaefer took no such action and has proffered no reason to excuse this failure.

### 2. *Prosecutorial Misconduct*

Rottschaefer next claims that the government resorted to prosecutorial misconduct to obtain a conviction. (See Doc. 140 at 20-32). Specifically,

Rottschaefer contends that the government selectively deleted hundreds of pages of exculpatory medical records and misled its own expert witness by not providing the witness with this critical information. According to Rottschaefer, the withheld medical records establish legitimate medical reasons for the controlled-substance prescriptions for which he was prosecuted.

We note that this claim is not frivolous. The allegedly omitted records tend to suggest plausible medical reasons for the controlled-substance prescriptions written for several of the patient-witnesses.[3] (See, e.g., Doc. 140-6 at 27-29). Rottschaefer has also submitted evidence that Dr. Clough was not provided with these medical records. (See Doc. 140 at 21 n.29, 23-24 & n.35). But even assuming *arguendo* that Rottschaefer's claims of prosecutorial misconduct are accurate, he clearly failed to utilize available trial remedies. As the treating physician, Rottschaefer presumably had firsthand knowledge of his patients' medical history, and Rottschaefer testified at trial. Rottschaefer could have attested to these reasons for his prescription practices. He also admits that he was aware at trial of the purportedly deleted documents and that the government had admitted at least some of these records as exhibits. (See Doc. 140 at 20-22 & nn.28-30). It follows that Rottschaefer could have sought to introduce this evidence as part of his defense or

---

[3] Rottschaefer points to patient-witness Pammy Miller ("Miller") as one of several examples. According to Rottschaefer, Miller suffered chronic pain following a serious car accident. Her injuries were so substantial that Rottschaefer ordered approximately 100 X-ray films and referred her to an orthopedic specialist roughly 30 times. (See Doc. 140 at 21 n.30). This information, he contends, was selectively withheld by the government from Dr. Clough.

7

moved for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on the alleged misconduct. See United States v. Dixon, 658 F.2d 181, 193 (3d Cir. 1981) (explaining that Rule 33 motions may be granted where there is a finding of prosecutorial misconduct). Errors which could be remedied by a new trial generally do not fall within the scope of the *coram nobis* writ. Rhines, 640 F.3d at 71. Hence, Rottschaefer has failed to establish that fundamental errors rendered his trial invalid or that no remedies were available to address the alleged errors.

### B. Rottschaefer's Failure to Seek Relief Earlier

Rottschaefer likewise cannot demonstrate that "sound reasons" exist for his failure to seek relief at an earlier time. The sound-reasons-for-delay standard is even more stringent than the metric used to evaluate Section 2255 motions. Id. In Mendoza v. United States, 690 F.3d 157 (3d Cir. 2012), the court held that the petitioner had unreasonably delayed seeking *coram nobis* relief by waiting four years to allege that his attorney had been ineffective. Mendoza, 690 F.3d at 159-60. The court reasoned that the petitioner's reliance on the unsettled state of the relevant law was not a sound reason to justify the delay. Id. Rottschaefer correctly notes that under United States v. Cariola, if a petitioner "has been denied a fundamental constitutional right, the passage of time will not preclude him from relief." Cariola, 323 F.2d at 183. However, the Cariola court did not obviate the diligence requirement for *coram nobis* relief. The court specifically noted that there was a mere 18-month interval between when the petitioner first learned of the constitutional violation and when he sought relief. Id. Such a delay, the court found, was not unreasonable. Id.

8

Rottschaefer offers no mitigating circumstance that would justify the substantial delay in this case. His sole contention is that his petition is "timely because the District Court's ruling on [his] 2255 evidentiary hearing constitutes a prime part of [his] request for a writ of [c]oram [n]obis[.]" (Doc. 140 at 2). Yet Rottschaefer's Section 2255 motion was rejected over seven years before he filed the instant petition—almost twice the length of time as the Mendoza case. Additionally, Rottschaefer's term of supervised release ended on February 7, 2013. (See Doc. 139). Thus, at the time he filed this petition, he had been potentially eligible to seek *coram nobis* relief for almost five years. Rottschaefer proffers no sound reason for his significant delay and therefore fails to satisfy another element necessary for *coram nobis* relief.

## IV.     Conclusion

For the foregoing reasons, we will deny Rottschaefer's petition (Doc. 140) for a writ of error *coram nobis*. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     July 11, 2019